IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JORGE A. MUNOZ, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| GREEN COUNTRY IMPORTS, LLC, a Division of Global Dealer Group, LLC, and VOLKSWAGEN TULSA, LLC,[1] | ) ) ) ) ) |
| Defendants. | ) |

Case No. 12-CV-322-GKF-FHM

## OPINION AND ORDER

Before the court is the Motion to Stay and to Compel Arbitration [Dkt. #15] filed by defendants Green Country Imports, LLC, ("GCI") and Volkswagen Tulsa LLC ("Volkswagen Tulsa"). Defendants seek to compel arbitration of the claims asserted in this action by plaintiff, Jorge A. Munoz ("Munoz"), and to stay this action pending arbitration.

### I. Background/Status of Case

Munoz was employed as a sales consultant for GCI from June 24, 2009, to August 2, 2009. [Dkt. #2, Complaint, ¶¶7, 17]. His Complaint asserts claims of hostile work environment, race discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*

On June 23, 2009, plaintiff and GCI executed an Arbitration Agreement (the "Agreement") that requires submission to arbitration of "any dispute between any employee(s)

---

[1] The Complaint alleges, based on information and belief, that GCI may have transferred all assets and liabilities to Volkswagen Tulsa. [Dkt. #2, ¶6]. Defendants asserts GCI legally changed its name to Volkswagen Tulsa, LLC in 2010. [Dkt. #15 at 2, n. 1].

and [GCI] which arises either directly or indirectly from Employee's employment with [GCI]."

[Dkt. #15, Ex. 1, Arbitration Agreement]. The Agreement also states, in pertinent part:

- [S]uch dispute shall be settled by arbitration in accordance with the rules for commercial arbitration of the American Arbitration Association (or a similar organization) in effect at the time the arbitration is initiated, and subject further to the provisions of any applicable Oklahoma arbitration law.

- I will submit any dispute—including but not limited to my termination—arising under or involving my employment with Green Country Imports LLC to binding arbitration within one (1) year from the date the dispute first arose;

- The prevailing party shall be awarded all of the filing fees and related administrative costs. Administrative and other costs of enforcing an arbitration award, including the costs of subpoenas, depositions, transcripts and the like, witness fees, payment of reasonable attorney's fees, and similar costs related to collecting an arbitrator's award, will be added to, and become a part of, the amount due pursuant to this Agreement.

- [I]n accordance with Green Country Imports LLC's Arbitration Policy I agree that the arbitration shall be the exclusive forum for resolving all disputes arising out of or involving my employment with Green Country Imports LLC or the termination of that employment.

[*Id.*].

In its Motion to Stay, GCI makes the following representations:

- GCI affirmatively stated that it will bear all arbitration costs such as the filing fee and arbitrator's fees. GCI did *not*, however, waive the right, in the event it is the prevailing party, to seek attorney's fees.

- GCI waived any right to seek dismissal of plaintiff's claim based on the one-year limitation for submitting disputes to arbitration.

[Dkt. #15 at 5, 7].

## II. General Law

Agreements containing arbitration provisions are valid, enforceable, and irrevocable under the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2. The FAA requires a district court to stay judicial proceedings where a written agreement provides for the arbitration of the dispute

2

that is the subject of the litigation. *Coors Brewing Co. v. Molson Breweries,* 51 F.3d 1511, 1514 (10th Cir. 1995); 9 U.S.C. § 3.

In considering a motion to compel arbitration, the court must determine (1) whether a valid agreement to arbitrate exists, and (2) whether the subject matter of the dispute is covered by the arbitration agreement. *Pierce v. Kellogg, Brown & Root, Inc.,* 245 F.Supp.2d 1212, 1215-16 (E.D. Okla. 2003) (citing *Coors,* 51 F.3d at 1515-16).

Plaintiff does not dispute his claims are covered by the arbitration agreement. However, he asserts the cost-splitting and cost-shifting provisions, as well as the one-year limitation period, render the agreement invalid. Additionally, he argues the agreement has no severability clause and therefore, the offending provisions cannot be severed from the contract; and defendant's after-the-fact waiver of the objectionable provisions does not render the agreement enforceable.

Arbitration agreements in employment contracts are generally enforceable. *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001). Agreements that require arbitration of statutory claims, including the Title VII claims at issue here, are also generally enforceable. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991).

Before 2000, circuit courts were split on the enforceability of fee-shifting provisions in arbitration agreements. The Tenth, Eleventh and District of Columbia Circuits refused to enforce arbitration agreements that potentially imposed high costs on an employee, holding that they effectively denied the Title VII plaintiff's forum to vindicate his claims. *See Shankle v. B-G Maint. Mgmt., Inc.,* 163 F.3d 1230, 1234;[2] *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054, 1062 (11th Cir. 1998); *Cole v. Burns Int'l Sec. Services,* 105 F.3d 1465, 1484-85

---

[2] In *Shankle*, the employee signed an arbitration agreement as a condition of his ongoing employment. 163 F.3d at 1232, 1233, 1235. The agreement covered all claims between the parties, including federal statutory claims, and explicitly required that the employee pay one-half of the arbitrator's fees. *Id.* at 1231. The court held that if the employee pursued arbitration, he would have been required to pay an arbitrator between $1,875 and $5,000, which he could not afford. Thus, he was effectively unable to vindicate his federal statutory rights.

3

(D.C. Cir. 1999). The First, Fifth and Seventh Circuits, in contrast, took the position that the presence of a fee-sharing provision did not automatically render the agreement unenforceable. *See Rosenberg, v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1, 15-16 (1st Cir. 1999); *Williams v. Cigna Fin. Advisors, Inc.,* 197 F.3d 752, 764 (5th Cir. 1999); *Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361, 366 (7th Cir. 1999).

In 2000, however, the Supreme Court in *Green Tree Financial Corp.-Alabama v. Randolph,* 531 U.S.79, 91-92 (2000) rejected the argument that a plaintiff's risk of having to pay high arbitration costs prevented her from vindicating her statutory rights. The court held that in light of the "liberal federal policy favoring arbitration agreements," such risk was "too speculative to justify the invalidation of an arbitration agreement." *Id.* at 91. It stated that "where … a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Id.* at 92.

After *Green Tree,* most circuits have recognized that a Title VII plaintiff seeking to avoid an arbitration agreement by arguing that prohibitive costs would undermine his statutory remedy bears the burden of demonstrating he is *likely* to bear such costs. *See Musnick v. King Motor Co. of Fort Lauderdale,* 325 F.3d 1255, 1258-59 (11th Cir. 2003) (compiling cases). Instead, courts have held that the question of enforceability must be answered on a case-by-case basis, considering whether the party seeking to avoid arbitration "establish[es] that enforcement of the agreement would 'preclude' him from 'effectively vindicating [his] federal statutory right in the arbitral forum.'" *Id.* at 1259.

In *Smith v. AHS Oklahoma Heart, LLC,* 2012 WL 3156877 (N.D. Okla.), Case No. 11-CV-691-TCK-FHM, Senior District Court Judge Terence C. Kern recently considered whether a

4

mandatory "loser pays" fee-shifting provision in an arbitration agreement between a physician and her employer rendered the arbitration agreement unenforceable. The provision at issue stated:

> Attorneys' fees in connection with the arbitration and the other costs and expenses of arbitration shall be awarded to the prevailing party. The decision and award of attorneys' fees of the arbitrator(s) shall be binding, final and conclusive on the Group and Physician.

*Id.* at *1. In *Smith*, plaintiff had sued the employer for alleged Title VII and Equal Pay Act ("EPA") violations. Judge Kern, reviewing post-*Green Tree* decisions, observed:

> These cases generally conclude that, because it is entirely speculative that the defendant will succeed and be awarded fees, the plaintiff cannot show that the fee-shifting provision prevents him from vindicating his statutory cause of action. These courts further reason that the arbitrator may refuse to enforce the fee-shifting provision as an impermissible contractual imitation on the plaintiff's statutory remedies, which creates yet another layer of speculation as to whether the plaintiff will actually bear prohibitive costs.
>
> Finally, such courts reason, any fee award that shows manifest disregard of the law is subject to judicial review and reversal. However, this reasoning has been called into question by Subsequent Supreme Court decisions. Therefore, this particular reasoning regarding the possibility of judicial review is of less persuasive value that at the time Musnick was decided.

*Id.* at *2 (citations omitted).

Judge Kern noted that although the Tenth Circuit, post-*Green Tree,* has not addressed the enforceability of a fee-shifting provision in the context of a Title VII case, it *has* considered the enforceability of such a provision in a Sarbanes-Oxley Act ("SOX")[3] whistle blower case, *Hill v. Ricoh Am. Corp.,* 603 F.3d 766, 779 (10th Cir. 2010). The arbitration agreement at issue in *Hill* stated, in pertinent part:

---

[3] Hill sued Ricoh under 18 U.S.C. § 1514A, which forbids employers from retaliating against "whistleblower" employees who report fraud in certain circumstances. A discharged employee who prevails in an enforcement action is entitled to reinstatement, lost wages, and reimbursement of other expenses, including reasonable attorney fees. 18 U.S.C. § 1514A(c)(2).

5

> Each party shall pay for his/her/its own fees and expenses of arbitration except that the cost of the arbitrator and any filing fee exceeding the applicable filing fee in federal court shall be paid by the Company; *provided, however, that all reasonable costs and fees necessarily incurred by any party are subject to reimbursement from the other party at the discretion of the arbitrator.*

*Id.* at 779 (emphasis in original). Hill argued the agreement was unenforceable because he might not be awarded attorney fees if he prevailed and he might be ordered to pay attorney fees if he lost. *Id.* The court rejected this argument, because nothing in the Employment Agreement's arbitration clause required the arbitrator to deny Mr. Hill his rights under SOX. *Id.* The court stated:

> The clause gives the arbitrator discretion to award him attorney fees if he prevails on his SOX claim. And assuming, without deciding, that Mr. Hill is correct that SOX prohibits imposing attorney fees on an unsuccessful plaintiff, nothing in the arbitration clause requires the arbitrator to compel him to pay Ricoh's attorney fees if he loses. Thus, the arbitrator has full authority to grant Mr. Hill the same SOX relief that he would receive in court.

*Id.* at 780. Citing *Green Tree,* the court found that Hill's fear that his SOX rights would not be vindicated was based on "an unsupported assumption that the arbitrator will be hostile to the substantive rights created by SOX," and "such an assumption is inappropriate." *Id.*

In *Smith,* the court found that since the fee-shifting provision was mandatory, its enforcement would preclude plaintiff from effectively vindicating, in an arbitral forum, her Title VII right to bring a non-frivolous suit without risking paying her opponent's fees and her right under the EPA to bring any suit without risking paying her opponent's fees. *Id.* at *3. Additionally, the court concluded that the language providing the arbitrators' decision would be "binding, final and conclusive" further decreased plaintiff's ability to effectively vindicate her statutory causes of action. *Id.* However, finding that the offending provision was not essential to the bargain, the court excised it and granted the motion to compel arbitration. *Id.* at *4.

6

### III. Analysis

Under the terms of this Agreement, the prevailing party is to be awarded all filing fees and related administrative costs. Further, administrative and other costs—including the costs of subpoenas, depositions, transcripts and the like, witness fees, payment of reasonable attorney's fees and similar costs related to collecting the arbitrator's award, are to be added to and become part of the amount due pursuant to the Agreement. [Dkt. #15, Ex. 1]. The Agreement also contains a one-year limitation for filing a claim. [*Id.*].

In its motion, GIC waived any right to seek dismissal of plaintiff's claim based on the one-year limitation in the Agreement. [Dkt. #15 at 7]. Further, it affirmatively stated it will bear "all arbitration costs such as the filing fee and arbitrator's fees." [Dkt. #15 at 5]. It does *not*, however, waive the right to recover attorney fees if it prevails on plaintiff's claims. It argues, instead, that the attorney fee issue is too speculative to conclude the Agreement abridges plaintiff's statutory rights.

Although the one-year limitation clearly is an impermissible restriction of plaintiff's Title VII rights, defendant's waiver moots the issue. Additionally, plaintiff's objection based on arbitration costs is obviated by defendant's express agreement to bear such costs.[4] However, the court finds, as did Judge Kern in *Smith,* that the mandatory "loser pays" attorney fee provision "nullifies plaintiff's right under Title VII to bring a non-frivolous suit without risking paying his opponent's fees." *Smith* at *3. Therefore, the court finds this provision to be unenforceable.

---

[4] Plaintiff has submitted an affidavit stating he is the sole wage earner for his family, which consists of his wife and two sons. [Dkt. #17, Ex. 6, Jorge Munoz Affid., ¶3] His total income for 2010 was $15,904; for 2011 was $28,390 and for 2012 to date is $22,048.97. [*Id.,* ¶2]. Further, he has submitted evidence that arbitration fees could be as high as $6,650, and the fees and expenses of the arbitrator would be substantial. [Dkt. #17, Ex. 2, pp. 54, 57; Exs. 3-4].

As in *Smith,* the court must determine whether to sever the unenforceable term or invalidate the entire agreement. This issue is controlled by the law governing the contract. *Smith* at *4 (citing *Spinetti v. Serv. Corp. Int'l,* 324 F.3d 212, 219 (3d Cir. 2003)). In this case, the Agreement is governed by Oklahoma law. [Dkt. #15, Ex. 1].

The Oklahoma Supreme Court has stated:

> If [a] provision is determined to be unlawfully discriminatory, and therefore unenforceable, the trial court must then determine whether the remaining parts of the contract are also unenforceable. *Restatement (Second) of Contracts* § 184 (1981). The enforceability of the remaining parts is dependent upon the expectations of the parties. If the invalid contractual provision is an essential part of the agreement and the parties would not have agreed absent that provision, then the entire contract is unenforceable. *Id.*; *Zerbetz v. Alaska Energy Center,* 708 P.2d 1270, 1282 (Alaska 1985). However, if the discriminatory and hence unenforceable provision is not considered essential, the offending provision will be excised and the remaining portions of the contract will be enforced. *Id.*

*Hargrave v. Canadian Valley Elec. Co-op, Inc.,* 792 P.2d 50, 60 (Okla. 1990).

The primary purpose of this arbitration agreement is to provide a mechanism to resolve employment related disputes. The court finds the attorney fee provision is not an "essential part" of the contract and, given the "liberal federal policy favoring arbitration agreements," concludes severance of the offending provision, is appropriate. *See Green Tree, supra. See also, Smith* at *4-*5.[5]

---

[5] Plaintiff argues the provision cannot, as a matter of law, be severed because the contract lacks a severability clause. The court disagrees. The court in *Hargrave* did not hold that a severability clause is a prerequisite to severability, and in *Spinetti,* the court rejected an argument that only contracts with severability clauses are capable of being severed, noting that the court's "unique power to modify the parties' contract … arises from the general equity powers of the court." 324 F.3d at 220.

### III. Conclusion

For the foregoing reasons, defendant GCI's Motion to Stay and Motion to Compel Arbitration [Dkt. #15] is granted.

ENTERED this 3rd day of October, 2012.

*[signature]*
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT